KELSEY, J.
This case raises the issue of whether a health care provider' must obtain informed consent from both parents of a minor child', rather than just one parent, before rendering non-emergency medical care or treatment to the minor child. We agree with the trial court’s'conclusion that the consent of one parent to a non-emergency medical procedure for a minor child is sufficient to permit the health care provider to render such care or treatment. We further agree with the trial court that this *701 rule applies even when the health care provider allegedly knew or should have known that the other parent objected to the care or treatment. We have carefully considered, and we reject without further comment, all of the arguments'the father raises on appeal. Accordingly, we' affirm the trial court’s dismissal of the action below and write to set forth the factual context and our legal analysis.

Parents’Disagreement Over Child’s Surgery.

Appellant, the father of the min'or dhild, filed a complaint alleging battery and intentional interference with parent-child relationship, after the defendant surgeon performed adenoid and ear-tube surgery on the minor child with the mother’s ‘¿ori-sent, but not the father’s consent. 1 We accept as true the allegations of the father’s complaint, which frame the dispute in the following factual context. The parents were separated, a dissolution of marriage action was pending, and both parents had equal custody rights to their-'two minor children. The record does not reflect any court order depriving either parent of authority to consent to medical care for the children, nor any other- legal impediment to either parent’s consent. The mother initially scheduled adenoid surgery for both of their minor children, but the father called the surgeon the night before the surgeries were to occur and expressed his lack of consent, whereupon the surgeon cancelled the surgeries.
Three months after the original surgeries were cancelled, the father learned that the mother had re-scheduled the surgery for the younger child, who was three years old. The sparse record befbre us does not include any evidence indicating whether* the child had experienced additional medical symptoms prompting the re-scheduling of the surgery. The father alleges that he informed a member of the surgeon’s staff by phone that he did not consent‘to the procedure. The child’s- medical chart includes a. nurse’s note entered before the surgery, stating that the father did not consent. The chart also includes a followup note entered after the.surgery stating that the mother had called before the surgery and informed staff that the parents’ respective attorneys had. worked out an agreement and that the father would be at the hospital to consent. The father alleges that the mother misrepresented his position. The father did not go to the hospital for the procedure and did not give consent. Only the mother gave written consent to the surgery, and the defendant surgeon then performed the surgery, The father has not alleged that the mother was not legally authorized to consent to the surgery; nor , has he alleged that the surgery was unnecessary, or that it was performed negligently, or that any complications resulted from it.
The surgeon called the father five days after the operation to give a follow-up report, and the father asserted that he did not know about or consent to the surgery, did not want to speak to the surgeon, and would be speaking to his attorney. The surgeon noted in the chart that her nurse had notified her pre-operatively that the parents had come to an agreement to proceed With the surgery and both -would consent. The father filed the lawsuit now at issue.
The surgeon and the hospital moved to dismiss the father’s complaint for failure to state a cause -of action, arguing among other things that Florida law authorizes a health care provider to render- non-emergency medical care and treatment to a minor upon the consent of one parent. The father countered that a health care provider in this situation must either refuse to-render the disputed care or treatment, or go to court for permission to provide the care. The trial court agreed with the defendants’ analysis and rendered *702 the order on appeal dismissing the father’s complaint, noting that this appears to be a question of first impression in Florida.

One Parent’s Consent Is Sufficient.

Florida’s medical consent statute provides that no recovery1 shall'be allowed against a health care provider based oh lack of informed consent if the provider obtains consent from the patient or another person authorized to give consent for 'the patient, if the provider’s' action is in accord with accepted medical standard’s and practice and' if the information 'conveyed by the provider would give a reasonable person an appropriate' general understanding of the procedure, potential alternatives,' " and potential' ' risks. § 766.103(3), Fla. Stat. (2013). ' The focus of the medical consent statute is the “informed” aspect of consent rather than the identity of the person’ giving' consent.' Nevertheless, the statute in relevant part defines a presumptively valid consent as one “which is evidenced in- writing and meets'the requirements of' subsection (3) [and] is validly signed by the patient or another authorized - person:” § 766.103(4)(a), Fla. Stat. This subsection does not require consent from all persons or even- more than one of. two or more people who may be authorized to-give consent, but rather only- from the- patient or “another authorized person” — singular. Id.
Like the general medical consent statute, the statute on removal of the. disability of nonage of minors authorizes a-parent, a legal custodian, or a legal guardian — sin-, guiar — to consent, to a minor’s medical care or treatment. § 743.0645(l)(c), Fla. Stat.. (defining a “[p]erson who has ¡the power to consent as otherwise provided by law” as including “a natural or adoptive parent, legal custodian, or legal guardian”), Similarly, the¡ statute on making, health care decisions for a developmentally disabled patient authorizes several categories of ¡persons, including a parent — singular— to make such decisions. § 765.401(l)(d), Fla. Stat. (providing a list of individuals, including “a parent of the patient,” to make health care decisions for a developmentally disabled patient in the absence of an advance directive).. ■
■No Florida - statute requires that a health care provider obtain consent from both parents or - from more than one among multiple people who are authorized to give consent for medical care of a minor. Each time, the issue is addressed, directly or indirectly,, the statutes .authorize a singular person with valid legal authority to consent to the provision of medical care or treatment tq a minor. To require consent from both parents would require us to add words to the statutes, .which we are not at liberty to do. Fla. Carry, Inc. v. Univ. of Fla., 180 So.3d 137, 151 (Fla. 1st DCA 2015) (“.Courts are not at liberty to add words., to ..statutes that were not placed there by the Legislature.”).
Like the statutes addressing consent to medical care of a minor, the limited, analogous Florida- case law indicates that one parent’s consent is sufficient. See O’Keefe v. Orea, 731 So.2d 680, 686 (Fla. 1st DCA 1998) (noting parent’s ,[singular] right to consent and to be. fully informed); Ritz v. Fla. Patients’ Comp. Fund, 436 So.2d 987, 989 (Fla. 5th DCA 1983) (“[T]he right to consent .to medical or-surgical treatment resides in the parent [singular] who has the legal responsibility to, maintain and support such [incompetent adult] child.”).
The sole relevant commentary in Florida legal publications also concludes that the consent of only one parent is. required and protects the health care-provider from suit by. the other parent: .
Although there is no Florida case on point, it is widely understood that if one parent .consents .to. the treatment, the provider is protected and the medical or surgical treatment may go forward. *703 The other parent then cannot sue the provider for battery if the treatment commences without his or her consent. In other words, one parent’s consent is enough as a matter of law. The provider has no duty to obtain the consent of both parents.
Ann Bittinger, Legal Hurdles to Leap to Get Medical Treatment for Children, Fla. Bar J., Jan. 2006, at 24, 29.
Given the existing Florida statutes, cases, and commentary indicating a uniform understanding that the consent of only one parent or guardian is sufficient to discharge a health care provider’s- duty to obtain informed consent before treating a minor, we reject the father’s arguments. His argument that health- care providers themselves should investigate and referee parental disputes, or initiate court proceedings to resolve parental disputes, is particularly ill-advised and unworkable. As the mother points out, even routine daily circumstances frequently result in only one parent’s being present for a child’s medical care: two-working-parent households, single parent households, business travel, and military service, to name but a few. The trial judge aptly illustrated the untenable position health care providers would occupy if, as the father argued, they were required to obtain consent from two parents or bear the burden of resolving issues or disputes between parents about their consents: -
How is the medical professional to determine whether there are, in fact, two parents? Is a parent named on the birth certificate as the father? Has the father relinquished his parental rights? Are the parents divorced? Does the divorce decree establish who has the superior authority to consent? What if there is a biological father who has not been identified by the mother? Is it the medical professional’s responsibility to search the putative father registry or to do a DNA test to determine the biological father? - What if the father lies to the doctor and says the mother is deceased? Must the medical professional require a death certificate?
We conclude, just as the trial court did, that Florida law does not-require health care-providers to assume the burden of refereeing or going to court to resolve disputes between parents, so long as at least one legally-authorized person provides consent. One would hope that parents committed to successful co-parenting, as they should be, would resolve these disputes between themselves or with the informal assistance of counselors or advis-ors. Failing that, a parent seeking to prevent the rendition of medical care or treatment to which thfe other parent has consented can go to court to seek an injunction and resolve the dispute. This would seem particularly appropriate where, as, here, the parents are already parties to a pending dissolution proceeding. In fact, the record indicates that the father later did precisely that in an attempt to prevent the older child from having adenoid surgery. If a court order deprives one parent of authority to consent to a minor child’s medical care, or the parent is otherwise not legally authorized to consent, the burden of communicating that information to the health care provider lies with the parent opposing the rendition of care or treatment. The bottom line is that health care providers are not required to referee parental disputes about medical care for their minor children, and may render medical care or treatment upon the consent of only one parent.
AFFIRMED.
WETHERELL, J. and DEMPSEY, ANGELA C., Associate Judge, concur.